21-1498
*Belya v. Kapral, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of February, two thousand twenty-three.

Present:

DEBRA ANN LIVINGSTON,
*Chief Judge,*
JOSÉ A. CABRANES,
RAYMOND J. LOHIER, JR.,
RICHARD J. SULLIVAN,
MICHAEL H. PARK,
WILLIAM J. NARDINI,
STEVEN J. MENASHI,
EUNICE C. LEE,
BETH ROBINSON,
MYRNA PÉREZ,
ALISON J. NATHAN,
SARAH A. L. MERRIAM,
*Circuit Judges.*

———————————————————————

ALEXANDER BELYA,

*Plaintiff-Appellee,*

v.                                          21-1498

HILARION KAPRAL, AKA
METROPOLITAN HILARION,

1

NICHOLAS OLKHOVSKIY, VICTOR POTAPOV, SERGE LUKIANOV, DAVID STRAUT, ALEXANDRE ANTCHOUTINE, GEORGE TEMIDIS, SERAFIM GAN, BORIS DMITRIEFF, EASTERN AMERICAN DIOCESE OF THE RUSSIAN ORTHODOX CHURCH OUTSIDE OF RUSSIA, THE SYNOD OF BISHOPS OF THE RUSSIAN ORTHODOX CHURCH OUTSIDE OF RUSSIA, MARK MANCUSO,

*Defendants-Appellants*.

_____

| | |
|---|---|
| For Defendants-Appellants: | Diana Verm Thomson (Daniel H. Blomberg, Lori H. Windham, Daniel D. Benson, on the brief), The Becket Fund for Religious Liberty, Washington, DC, and Donald J. Feerick, Jr. (Alak Shah, on the brief), Feerick Nugent MacCartney, PLLC, South Nyack, NY. |
| For Plaintiff-Appellee: | Bradley Girard (Richard B. Katskee, on the brief), Americans United for Separation of Church and State, Washington, DC, and Oleg Rivkin, Rivkin Law Group PLLC, New York, NY. |
| For Amici Curiae Roman Catholic Archdiocese of New York, Jurisdiction of the Armed Forces and Chaplaincy of the Anglican Church in North America, General Conference of Seventh-day Adventists, | Gordon D. Todd, Daniel J. Hay, John L. Gibbons, Sidley Austin LLP, Washington, DC. |

Lutheran Church–Missouri Synod, International Society for Krishna Consciousness (ISKCON), Serbian Orthodox Diocese of New Gracanica–Midwestern America, in support of Defendants-Appellants:

For Amicus Curiae Jewish Coalition for Religious Liberty, in support of Defendants-Appellants:

Ryan Paulsen, Haynes and Boone, LLP, Dallas, TX.

For Amici Curiae Constitutional Law Scholars, in support of Defendants-Appellants:

Matthew T. Nelson, Warner Norcross + Judd LLP, Grand Rapids, MI.

Amici Curiae States of Nebraska, Alabama, Alaska, Arizona, Arkansas, Georgia, Kansas, Kentucky, Louisiana, Mississippi, Montana, Oklahoma, South Carolina, Texas, and Utah, in support of Defendants-Appellants:

James A. Campbell, Solicitor General of Nebraska; Douglas J. Peterson, Attorney General of Nebraska; David T. Bydalek, Chief Deputy Attorney General of Nebraska; Steve Marshall, Attorney General of Alabama; Treg R. Taylor, Attorney General of Alaska; Mark Brnovich, Attorney General of Arizona; Leslie Rutledge, Attorney General of Arkansas; Chris Carr, Attorney General of Georgia; Derek Schmidt, Attorney General of Kansas; Daniel Cameron, Attorney General of Kentucky; Jeff Landry, Attorney General of Louisiana; Lynn Fitch, Attorney General of Mississippi; Austin Knudsen, Attorney General of Montana; John M. O'Connor, Attorney General of Oklahoma; Alan Wilson, Attorney General of South

Carolina; Ken Paxton, Attorney General of Texas; and Sean D. Reyes, Attorney General of Utah.

Following disposition of this appeal on August 17, 2022, Defendants-Appellants filed a petition for rehearing *en banc*. The opinion was amended September 16, 2022, and an active judge of the Court thereafter requested a poll on whether to rehear the case *en banc*. A poll having been conducted and there being no majority favoring *en banc* review, the petition for rehearing *en banc* is hereby **DENIED**.

Raymond J. Lohier, Jr., *Circuit Judge*, joined by Eunice C. Lee, Beth Robinson, Alison J. Nathan, and Sarah A. L. Merriam, *Circuit Judges*, concurs by opinion in the denial of rehearing *en banc*.

José A. Cabranes, *Circuit Judge*, dissents by opinion from the denial of rehearing *en banc*.

Michael H. Park, *Circuit Judge*, joined by Debra Ann Livingston, *Chief Judge*, and Richard J. Sullivan, William J. Nardini, and Steven J. Menashi, *Circuit Judges*, dissents by opinion from the denial of rehearing *en banc*.

Denny Chin, *Circuit Judge*, filed a statement with respect to the denial of rehearing *en banc*.

Joseph F. Bianco, *Circuit Judge*, took no part in the consideration or decision of the petition.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4

RAYMOND J. LOHIER, JR., *Circuit Judge*, joined by EUNICE C. LEE, BETH ROBINSON, ALISON J. NATHAN, and SARAH A. L. MERRIAM, *Circuit Judges*, concurring in the order denying rehearing *en banc*:

I concur fully in the decision to deny in banc rehearing in this case for the reasons stated in the panel opinion, *see Belya v. Kapral*, 45 F.4th 621 (2d. Cir. 2022), as well as for the reasons contained in the excellent statement of my colleague, Senior Judge Chin, in support of denial. I add only a few observations.

First, there is no circuit split on the extremely narrow procedural issue presented in this case. The panel opinion avoids generating one, and the dissents from the denial of rehearing in banc identify none. Judge Park's dissent, by contrast, proposes a significant judicial expansion of the collateral order doctrine and the circumstances under which application of the doctrine is warranted under *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 545-46 (1949), and it does so without offering any limiting principle. Nothing in the dissent's approach would prevent a further expansion of the collateral order doctrine to include virtually every other "liberty"-based right. And the approach runs head-long into the Supreme Court's admonition that "the class of collaterally appealable orders must remain 'narrow and selective in its membership,'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009) (quoting *Will v. Hallock*, 546 U.S. 345, 350

1

(2006)), even if that means litigants are "require[d] . . . to wait until after final judgment to vindicate valuable rights," *id.* at 108-09. "This admonition has acquired special force in recent years with the enactment of legislation designating rulemaking, not expansion by court decision, as the preferred means for determining whether and when prejudgment orders should be immediately appealable." *Id.* at 113 (quotation marks omitted).

Second, even a casual reader will notice the total mismatch between the dissent's description of Belya's lawsuit and the lawsuit itself. It bears repeating Judge Chin's observation that there is no basis *whatsoever* to second-guess the nature of Belya's defamation claim or to suspect that his lawsuit is not what it purports to be. The dissent insinuates that it is merely "styl[ed]" as a defamation claim to avoid the church autonomy doctrine and "questions of religious doctrine." Dissent at 21-22. But at this stage, Belya's claim *is* a genuine defamation claim that, as the dissent's refusal to take it at face value suggests, would not implicate church autonomy.

Third, by comparing the "[d]enial of a church autonomy defense . . . to qualified immunity," the dissent unfortunately distorts the panel opinion's holding that the defense is premature rather than unavailable. Dissent at 15; *see*

2

*Belya*, 45 F.4th at 631 ("It is possible that at some stage Defendants' church autonomy defenses will require limiting the scope of Belya's suit, or the extent of discovery, or even dismissal of the suit in its entirety. But we cannot and do not prematurely jump into the fray."). And even if the comparison were meaningful, the panel opinion employs essentially the same order of analysis that applies in appeals from denials of qualified immunity. A defendant who claims qualified immunity must fully stipulate to the plaintiff's recitation of facts and show her entitlement to qualified immunity as a matter of law before a court of appeals can have jurisdiction over the claim. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Any dispute of fact, no jurisdiction. Here, of course, the church disputes the facts relevant to Belya's defamation claim. *See Belya*, 45 F.4th at 634 ("The[r]e are outstanding secular fact questions that are not properly before us – and would not require a fact-finder to delve into matters of faith and doctrine.").

Finally, the panel's decision regarding appellate jurisdiction at this stage in the case poses no threat to the church autonomy doctrine, which has thrived without help from the expansion of the collateral order doctrine that the dissent proposes. We can agree on the narrow procedural issue before us without disagreeing about the vital importance of church autonomy and governance.

JOSÉ A. CABRANES, *Circuit Judge,* dissenting from the order denying rehearing *en banc*:

I write separately simply to underscore that the issues at hand are of "exceptional importance" and surely deserve further appellate review. Fed. R. App. P. 35(a)(2). The denial of *en banc* review in this case is a signal that the matter can and should be reviewed by the Supreme Court.

MICHAEL H. PARK, *Circuit Judge*, joined by DEBRA ANN LIVINGSTON, *Chief Judge*, and RICHARD J. SULLIVAN, WILLIAM J. NARDINI, and STEVEN J. MENASHI, *Circuit Judges*, dissenting from the order denying rehearing *en banc*:

This case arises from a minister's suspension by his church. The church autonomy doctrine, which is rooted in the Religion Clauses of the First Amendment, generally requires courts to stay out of such matters. But the panel decision leaves the church defendants subject to litigation, including discovery and possibly trial, on matters relating to church governance. This imperils the First Amendment rights of religious institutions. Denials of church autonomy defenses should be included in the narrow class of collateral orders that are immediately appealable.

The panel decision adopts a "neutral principles of law" limitation on the church autonomy doctrine that would allow courts to resolve "secular components of a dispute involving religious parties." *Belya v. Kapral*, 45 F.4th 621, 630 (2d Cir. 2022). Here, that means that a minister's lawsuit against his former church—because it is styled as a defamation claim—must proceed to final judgment before the church can appeal the denial of its religious autonomy defense. The panel's extension of this "neutral principles" test from an entirely different line of cases involving church property disputes will invite courts to

1

wade into the details of ecclesiastical matters. And although the panel attempts to cabin its decision to these defendants on the facts available at this stage of their case, its holding will categorically deny interlocutory appeals for church autonomy defenses and reduce the doctrine to a defense against liability only.

In my view, the First Amendment provides more protection to religious institutions than that, so I would have granted the petition for rehearing *en banc*.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff Alexander Belya was a priest in the Russian Orthodox Church Outside of Russia ("ROCOR"), which is a "semi-autonomous" part of the Russian Orthodox Church. J. App'x at 88. Church rules govern the relationship between ROCOR and the Russian Orthodox Church, including elections of ROCOR bishops, which must be approved by the Russian Orthodox Church.

In December 2018, ROCOR's bishops elected Belya as Bishop of Miami. Defendant Hilarion Kapral—then the leader of ROCOR—sent a letter to the Russian Orthodox Church seeking approval of Belya's election. But a group of church leaders opposed to Belya urged Hilarion to "undo" the appointment. *Id.* at 95. These church leaders sent a letter to Hilarion and ROCOR leaders

2

questioning the authenticity of the letters announcing Belya's election. Hilarion suspended Belya from his "priestly duties," pending an investigation. Belya then left ROCOR for the Greek Orthodox Church.

B.    Procedural History

In August 2020, Belya sued ROCOR and its leadership, including the church leaders who opposed his elevation. Belya alleged defamation and sought damages for reputational injury and losses from the decline in his church membership.

Defendants sought to file a motion to dismiss in a three-page pre-motion letter as required by the district court's individual practices. This letter previewed Defendants' argument that the district court lacked subject-matter jurisdiction under the church autonomy doctrine. The district court *sua sponte* construed the letter as a Rule 12(b)(6) motion to dismiss and denied it.[1]  *Belya v. Hilarion*, No. 20-CIV-6597, 2021 WL 1997547, at *1 (S.D.N.Y. May 19, 2021). The court was "persuaded Belya brings a suit that may be resolved by appealing to neutral principles of law."  *Id.* at *4.

---

[1] We have repeatedly urged district courts against using this practice to dispose of complex matters.  *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53–56 (2d Cir. 2022) (collecting cases and noting that "the district court's course of action did nothing to conserve judicial resources").

3

Defendants moved to certify an interlocutory appeal, arguing that the application of the church autonomy doctrine is a "controlling question of law as to which there is substantial ground for difference of opinion." District Ct. Doc. No. 54 at 1 (quoting 28 U.S.C. § 1292(b)). The district court summarily denied the motion, concluding that "the controlling legal doctrines . . . are well established" and "Defendants' arguments amount to . . . factual disputes." *Belya v. Kapral*, No. 20-CIV-6597, 2021 WL 2809604, at *2 (S.D.N.Y. July 6, 2021).

Finally, Defendants submitted another pre-motion letter seeking leave to file a motion to bifurcate discovery in order to protect against disclosures that might infringe on church autonomy. In the alternative, Defendants sought a stay pending appeal. The district court again *sua sponte* construed the letter as a fully briefed motion and summarily denied it, stating that bifurcation was "unwarranted" and that it "w[ould] not pass judgment on the internal policies and or determinations of the Russian Orthodox Church Outside Russia." J. App'x at 147. The district court also denied a stay as "unnecessary" without explanation. *Id.*

## II.  LEGAL PRINCIPLES

This case involves a conflict between two legal doctrines.   On one hand, the church autonomy doctrine protects religious institutions from court interference in matters of faith and church governance.   On the other hand, the collateral order doctrine permits appellate review of only a narrow set of non-final decisions.

A.     The Church Autonomy Doctrine

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."   The Religion Clauses together establish the "independence" of churches "in matters of faith and doctrine and in closely linked matters of internal government."   *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2061 (2020).   That independence includes "autonomy with respect to internal management decisions that are essential to the institution's central mission," including "the authority to select, supervise, and if necessary, remove a minister without interference by secular authorities."   *Id.* at 2060.

The church autonomy doctrine has a "rich historical pedigree" that "informed the meaning of the Constitution and its Religion Clauses at the Founding."   *McRaney v. N. Am. Mission Bd. of S. Baptist Convention, Inc.*, 980 F.3d

5

1066, 1075–76 (5th Cir. 2020) (Oldham, *J.*, dissenting from denial of rehearing *en banc*). "[T]he jurisdictional line prohibiting civil courts from intruding on ecclesiastical matters is an ancient one." *Id.* at 1077, 1076–78 (tracing the jurisdictional boundaries between civil and ecclesiastical courts from the Middle Ages and English law). The Founders incorporated this jurisdictional understanding of religious institutional autonomy into the First Amendment. *See id.* at 1078–80. This meant that the state had no role in church governance, including the selection of ministers, rulemaking, and organization. Indeed, James Madison, "the leading architect of the religion clauses," vetoed a bill that established "rules and proceedings relative purely to the organization and polity of the church." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 184–85 (2012) (quoting *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 141 (2011), and 22 Annals of Cong. 982–983 (1811)).

The Supreme Court first explicitly articulated a form of the church autonomy doctrine in *Watson v. Jones*, 80 U.S. 679 (1871). *Watson* explained that the First Amendment gives churches independence in matters of "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Id.* at 733.

6

Subsequent cases clarified the reach of the doctrine. In *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94 (1952), the Supreme Court held unconstitutional a New York law that recognized the Russian Orthodox Church in the United States as the true owner of church property instead of the Russian Orthodox Church in Russia. *See id.* at 107–08. The Court reasoned that "[*Watson*] radiates . . . a spirit of freedom for religious organizations, an independence from secular control or manipulation, in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Id.* at 116.

The Supreme Court later held that the Illinois Supreme Court should not have intervened in a dispute involving a church's suspension of a minister. *See Serb. E. Orthodox Diocese for U.S. & Can. v. Milivojevich*, 426 U.S. 696, 718–20 (1976). The Court also interpreted the National Labor Relations Act to deny the National Labor Relations Board jurisdiction over religious schools because there was a significant risk of excessive entanglement with religion. *See NLRB v. Cath. Bishop of Chi.*, 440 U.S. 490, 502 (1979). More recently, the Supreme Court has held that the ministerial exception "precludes application of [employment discrimination

laws] to claims concerning the employment relationship between a religious institution and its ministers." *Hosanna-Tabor*, 565 U.S. at 188.

In sum, the church autonomy doctrine has long prohibited court interference with "matters of church government as well as those of faith and doctrine." *Our Lady*, 140 S. Ct. at 2055 (quoting *Kedroff*, 344 U.S. at 116).

B.    The Collateral Order Doctrine

The courts of appeals have jurisdiction over appeals from "final decisions of the district courts." 28 U.S.C. § 1291. "Although 'final decisions' typically are ones that trigger the entry of judgment, they also include a small set of prejudgment orders that are 'collateral to' the merits of an action and 'too important' to be denied immediate review." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

The collateral order doctrine is "best understood not as an exception to the 'final decision' rule . . . but as a 'practical construction' of it." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (citation omitted). Under the collateral order doctrine, the courts of appeals have jurisdiction over certain non-final decisions involving claims that are "too important to be denied review and too independent of the

8

cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen*, 337 U.S. at 546. Appeals are thus permitted from collateral orders "[1] that are conclusive, [2] that resolve important questions separate from the merits, and [3] that are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995).

In deciding whether a collateral order is appealable, "we do not engage in an individualized jurisdictional inquiry"—"[r]ather, our focus is on the entire category to which a claim belongs." *Mohawk*, 558 U.S. at 107 (cleaned up). The Supreme Court has emphasized that the scope of the doctrine is modest and membership in the "small class" of collaterally appealable orders is "narrow and selective." *Will*, 546 U.S. at 350. "[T]he decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Mohawk*, 558 U.S. at 107 (quoting *Will*, 546 U.S. at 352–53).

## III. DISCUSSION

The panel dismissed Defendants' appeal, holding that it lacked appellate jurisdiction to review the district court's denials of Defendants' church autonomy

9

defenses.   The panel concluded that the district court's orders (1) were not a "final rejection" of Defendants' church autonomy defenses, (2) did not deny "a claim of right separable from the merits," and (3) were not "effectively unreviewable on appeal" because the case turned on "outstanding secular fact questions" that "would not require a fact-finder to delve into matters of faith and doctrine." *Belya*, 45 F.4th at 631–34.

The panel erred in two ways.   First, it misapplied the collateral order doctrine.   Rejections of church autonomy defenses should be immediately appealable, in the same way that denials of qualified immunity are appealable. Second, the panel's novel extension of the "neutral principles" approach is inconsistent with precedent and will substantially limit the church autonomy doctrine.

A.      Denials of Church Autonomy as Appealable Collateral Orders

1.       *The Panel's Misapplication of the Collateral Order Doctrine*

The panel misapplied each prong of the collateral order doctrine.   First, the district court's decision is "conclusive" because it subjects Defendants to litigation over religious matters.   The church autonomy doctrine protects religious institutions from the litigation process itself where the dispute concerns "matters

of church government as well as those of faith and doctrine." *Our Lady*, 140 S. Ct. at 2055 (citation omitted); *see also Cath. Bishop of Chi.*, 440 U.S. at 502 ("It is not only the conclusions that . . . may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions."); *Milivojevich*, 426 U.S. at 718 (describing the Illinois Supreme Court's "detailed review" of "internal church procedures" as "impermissible under the First and Fourteenth Amendments"); *Hosanna-Tabor*, 565 U.S. at 205–06 (Alito, *J.,* concurring) ("[T]he mere adjudication of such questions would pose grave problems for religious autonomy.").[2]   A court order denying a church autonomy defense is "conclusive" because it decides the church's "right not to face the other burdens of litigation," which is the "critical part of this inquiry." *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 147 (2d Cir. 2013) (cleaned up).

The panel decided that the district court's orders were not "conclusive because they d[id] not bar any defenses, they did not rule on the merits of the church autonomy defense, and they permit Defendants to continue asserting the

---

[2] To be sure, none of these cases arose at the motion to dismiss stage, so none explicitly held that the church autonomy doctrine shields churches from the litigation process altogether. *See Our Lady*, 140 S. Ct. at 2058–59 (appeal from summary judgment); *Hosanna-Tabor*, 565 U.S. at 180–81 (same); *Cath. Bishop of Chi.*, 440 U.S. at 495 (petition for review of agency proceeding); *Milivojevich*, 426 U.S. at 707 (appeal from judgment after trial).   But the reasoning of these cases leads to the same conclusion: that "the very process of inquiry" into matters of faith and church governance offends the Religion Clauses.   *Cath. Bishop of Chi.*, 440 U.S. at 502.

11

defense." *Belya*, 45 F.4th at 631; *see also* Statement of Judge Chin ("Statement") at 5 (noting that "at a later point," "the scope of Belya's claims and discovery might have to be limited and dismissal . . . might even be warranted"). But here, "conclusiveness" does not turn on whether the church autonomy defense may be raised again later because subjecting Defendants to further litigation would itself burden their First Amendment rights. *See Liberty Synergistics*, 718 F.3d at 151 ("[W]hen the essence of a right is to shield certain defendants from the burdens of litigation, collateral review is not defeated by the opportunity for post-judgment review of the same legal question that arose when considering the earlier order.").

Second, the church autonomy doctrine involves a "claim[] of right separable from, and collateral to, rights asserted in the action" that is "too important to be denied review." *Cohen*, 337 U.S. at 546. A church autonomy defense is distinct from the merits of a defamation claim. *Cf. Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1036 (10th Cir. 2022) (agreeing that the applicability of the ministerial exception is "clearly . . . separate from the merits," even while ruling against the defendant on other grounds).

The panel decision does not seriously contest this point. Indeed, the panel itself emphasized that Belya's defamation claim raised "secular fact questions"

12

that "would not require a fact-finder to delve into matters of faith and doctrine." *Belya*, 45 F.4th at 634. And the panel acknowledged that "it is possible that, in some circumstances, the church autonomy doctrine can present questions separable from the merits of a defamation claim," but it ultimately concluded that it was "too soon to say at this point." *Id.* at 632. The panel's effort to cabin its holding to the specific procedural posture and the facts available to it at the time, however, is inconsistent with the Supreme Court's repeated "warn[ing] that . . . appealability under § 1291 is to be determined for the entire category to which a claim belongs," and is *not* "a case-by-case . . . determination." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (cleaned up). Whether the church autonomy defense applies is a separate—and important—question from the merits of a defamation claim.

Third, the district court's order is not "effectively reviewable" on appeal from final judgment. *Mohawk*, 558 U.S. at 107. As noted above, the First Amendment "prohibits" the very "inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow." *Milivojevich*, 426 U.S. at 713; *see supra* at 10–11. "[A] civil court must accept the ecclesiastical decisions of church tribunals as it finds them," and no more.

13

*Milivojevich*, 426 U.S. at 713; *accord Our Lady*, 140 S. Ct. at 2069 (warning against "judicial entanglement in religious issues"); *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 975 (7th Cir. 2021) (*en banc*) ("[A]voidance, rather than intervention, should be a court's proper role when adjudicating disputes involving religious governance."). Thus, after final judgment, the harm from judicial interference in church governance will be complete.

The panel relied on the Supreme Court's statement in footnote four of *Hosanna-Tabor* that the ministerial exception "operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar." 565 U.S. at 195 n.4. But that does not resolve the issue because affirmative defenses, such as qualified immunity, may still be immediately appealable. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) ("Qualified . . . immunity is an affirmative defense."); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (holding that denials of qualified immunity are appealable under the collateral order doctrine).

The panel thus misapplied the collateral order doctrine. The denial of a church autonomy defense is conclusive, separate from the merits, and effectively unreviewable on appeal after final judgment.

2.    *Comparison to Qualified Immunity*

Denial of a church autonomy defense should be an appealable collateral order in light of its strong resemblance to qualified immunity. First, both are rooted in foundational constitutional interests. In the case of qualified immunity, "subjecting officials to the risks of trial" may "implicate separation-of-powers concerns." *Harlow*, 457 U.S. at 816, 817 n.28. Similarly, the church autonomy doctrine is "a structural [constitutional protection] that categorically prohibits federal and state governments from becoming involved in religious leadership disputes." *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836 (6th Cir. 2015); *see supra* at 5–6.

And second, both are protections against the burdens of litigation itself. Qualified immunity recognizes "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question" whether the doctrine applies. *Mitchell*, 472 U.S. at 526 ("The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." (emphasis omitted)). Similarly, subjecting churches to litigation and trial over matters of church government itself infringes their First Amendment

rights.  *See supra* at 11 (citing *Cath. Bishop of Chi.*, 440 U.S. at 502; *Milivojevich*, 426 U.S. at 718).

Several courts have acknowledged the similarities between church autonomy and qualified immunity.  *See, e.g.*, *McCarthy v. Fuller*, 714 F.3d 971, 975 (7th Cir. 2013) (justifying collateral review of the denial of church autonomy because it is "closely akin to a denial of official immunity"); *Skrzypczak v. Roman Cath. Diocese of Tulsa*, 611 F.3d 1238, 1242 (10th Cir. 2010) ("[T]he ministerial exception, like the broader church autonomy doctrine, can be likened 'to a government official's defense of qualified immunity.'" (citation omitted)); *Petruska v. Gannon Univ.*, 462 F.3d 294, 302–03 (3d Cir. 2006) (agreeing that the church autonomy doctrine is similar to a defense of qualified immunity because "[t]he exception may serve as a barrier to the success of a plaintiff's claims, but it does not affect the court's authority to consider them").

The panel's rejection of the analogy is unpersuasive.  It stated that a denial of qualified immunity is immediately appealable only "to the extent that it turns on an issue of law."  *Belya*, 45 F.4th at 634 (citation omitted).  And in this case, the panel concluded that "[d]ecidedly non-ecclesiastical questions of fact remain." *Id.*  But the applicability of the church autonomy doctrine, like qualified

16

immunity, is at bottom a question of law. Both inquiries require applying law to facts—here, assessing whether the dispute involves "matters of church government" or "of faith and doctrine," *Our Lady*, 140 S. Ct. at 2055—but that does not change the nature of the inquiry. Answering the question whether the church autonomy defense applies is not somehow prohibitively more fact-bound than determining whether a defendant is entitled to qualified immunity.[3]

In light of these doctrinal similarities, denial of a church autonomy defense, like denial of qualified immunity, should be an appealable collateral order.[4]

B.    The "Neutral Principles" Approach

Finally, the panel's novel extension of the "neutral principles" approach is inconsistent with precedent and threatens to eviscerate the church autonomy doctrine. The panel held that "[w]hen a case can be resolved by applying well-established law to secular components of a dispute, such resolution by a secular

---

[3] Both the Statement and Concurrence correctly note that denials of qualified immunity cannot be appealed when they turn on facts. *See* Statement at 8–9; Concurrence at 2–3. But this is of little relevance here. First, when the district court denied the church autonomy defense, Defendants did not dispute the sufficiency of the evidence. *Franco v. Gunsalus*, 972 F.3d 170, 174 (2d Cir. 2020); J. App'x at 16–18. Second, the panel decision categorically denies immediate appealability of any church autonomy defense, no matter what the facts might be. *See supra* at 13.

[4] Sovereign immunity provides another helpful comparator for immediately appealable orders. Like qualified immunity and church autonomy, sovereign immunity is "implicit in the constitutional design," *Alden v. Maine*, 527 U.S. 706, 730 (1999), and protects states from the burdens of litigation, *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993).

17

court presents no infringement upon a religious association's independence." *Belya*, 45 F.4th at 630; *see also* Statement at 11 ("Using neutral principles of law to resolve secular components of a dispute involving religious parties does not infringe on religious parties' independence.").  There are several problems with this.

First, the Supreme Court has already rejected this approach in the context of church employment disputes.  Even "valid and neutral" employment discrimination laws cannot apply to "an internal church decision that affects the faith and mission of the church itself."  *Hosanna-Tabor*, 565 U.S. at 190.  The same principle applies here.

Second, the panel's extension of the "neutral principles" approach from a different context involving church property disputes is unfounded.  *See Jones v. Wolf*, 443 U.S. 595, 604 (1979) ("[A] State is constitutionally entitled to adopt neutral principles of law *as a means of adjudicating a church property dispute*." (emphasis added)).  Courts have generally declined to extend this approach to other areas. *See, e.g.*, *Hutchison v. Thomas*, 789 F.2d 392, 396 (6th Cir. 1986) ("The 'neutral principles' doctrine has never been extended to religious controversies in the areas of church government, order and discipline, nor should it be."); *Simpson v. Wells*

*Lamont Corp.*, 494 F.2d 490, 493–94 (5th Cir. 1974) (rejecting a dismissed minister's claim that "neutral principles" could apply to his civil rights and constitutional claims for being evicted from the church parsonage). *But see McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 350 (5th Cir. 2020) (relying on "neutral principles" to reverse a district court's dismissal of a church official's tort claims against a church).

Finally, the "neutral principles" approach does not make sense for disputes about church governance. The panel decision appears at times to limit the scope of the church autonomy defense to "matters of faith and doctrine" only. *See, e.g.*, *Belya*, 45 F.4th at 634; *see also* Statement at 7 (describing the defense as applying to "matters of 'religious doctrine[]' or 'religious belief'"). But Supreme Court precedent is clear that the defense is broader and covers "matters of church government" as well. *Our Lady*, 140 S. Ct. at 2055.

In *Jones*, the "true" owner of church property was disputed, so there was not a church government to which the court could defer.[5] *See* 443 U.S. at 597–98

---

[5] The "neutral principles" approach makes sense only when churches themselves invite judicial scrutiny. *See McRaney*, 980 F.3d at 1071 (Ho, J., dissenting from denial of rehearing *en banc*) (explaining that *Jones*'s "neutral principles" approach will "*protect* religious autonomy . . . by assuring that secular courts would intervene in religious affairs *only* when the religious community itself had expressly stated in terms accessible to a secular court how a particular controversy should be resolved" (quoting W. COLE DURHAM & ROBERT SMITH, 1 RELIGIOUS ORGANIZATIONS & THE LAW § 5:16 (2017))).

(describing the split between two church factions). Giving courts a license to apply "neutral principles" to matters of church government, faith, or doctrine would swallow the church autonomy doctrine altogether. Almost any cause of action has secular components that can be resolved using some facially neutral principles. In *Milivojevich*, the Supreme Court of Illinois concluded that the church "had not followed its own laws and procedures" in suspending a minister.[6] 426 U.S. at 713. The Supreme Court held that this approach was wrong because "inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow . . . is exactly the inquiry that the First Amendment prohibits." *Id.* "[R]ecognition of such an exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry." *Id.*[7]

---

[6] There were neutral principles in *Milivojevich*. The Supreme Court of Illinois decided that the minister's suspension was not valid because, under church procedures, the minister "was not validly tried within one year of his indictment" by the church tribunals, among other issues. 426 U.S. at 708. The Supreme Court rejected this foray into church governance. Here, the panel assures us that neutral principles govern "non-ecclesiastical questions of fact" raised by Belya, including whether the "bishop's official letterhead" and the "bishop's official seal" were used and whether "the purported signatories actually sign[ed] the letters." *Belya*, 45 F.4th at 634; Statement at 2–3. But these are the same types of factual questions the Court rejected in *Milivojevich*.

[7] *See also* Robert Joseph Renaud & Lael Daniel Weinberger, *Spheres of Sovereignty: Church Autonomy Doctrine and the Theological Heritage of the Separation of Church and State*, 35 N. KY. L. REV. 67, 89, 92 (2008) ("There is no way to resolve an issue of church discipline by 'neutral principles.'").

Here, Belya brought a defamation claim, alleging a false campaign by church leaders to remove him. But it is difficult to see how a court could assess that claim without considering the reasons for the church's decisions, including whether Defendants correctly determined that Belya was never elected Bishop of Miami and whether they acted in good faith—all matters of "internal church procedures." *Milivojevich*, 426 U.S. at 718.[8]

The panel's focus on whether there are "secular components of a dispute" that can be resolved using "neutral principles of law" is thus misplaced.[9] Simply accepting Belya's styling of the case as a defamation claim, and reasoning that such a claim can be decided with neutral principles of law, elevates form over substance—almost any ministerial dispute could be pled to avoid questions of

---

[8] State courts have come to similar conclusions in defamation cases involving church governance and discipline. *See, e.g.*, *Pfeil v. St. Matthews Evangelical Lutheran Church of the Unaltered Augsburg Confession of Worthington*, 877 N.W.2d 528, 541 (Minn. 2016) ("[W]e simply recognize that adjudicating a defamation claim based on statements made during the course of a church disciplinary proceeding and published exclusively to members of the religious organization and its hierarchy necessarily fosters an excessive entanglement with religion . . . ."); *Purdum v. Purdum*, 301 P.3d 718, 727 (Kan. 2013) ("[Plaintiff's] defamation action involves an ecclesiastical subject matter, and adjudication of it would entangle the civil courts in a church matter."); *C.L. Westbrook, Jr. v. Penley*, 231 S.W.3d 389, 400 (Tex. 2007) (holding that plaintiff's tort claims against her church, including defamation, could not be adjudicated by neutral principles without "imping[ing] upon [the church's] ability to manage its internal affairs").

[9] The panel decision states that "simply having a religious association on one side of the 'v' does not automatically mean a district court must dismiss the case or limit discovery." *Belya*, 45 F.4th at 630. But this is not a fair characterization of the church autonomy defense. *See Our Lady*, 140 S. Ct. at 2061. The charge that "the Dissent's view is that churches are generally immune from the litigation process" is also wrong. Statement at 6.

21

religious doctrine. Taken to its logical endpoint, this approach would eviscerate the church autonomy doctrine.

## IV. CONCLUSION

Our Court's disagreement in this case reflects the growing number of courts struggling to define the contours of the church autonomy doctrine in the wake of *Hosanna-Tabor*.[10] But under the panel's "neutral principles" approach, this confusion will quickly dissipate as the church autonomy doctrine is reduced to a defense against liability only, eroding the First Amendment's protections for religious institutions. I respectfully dissent from the denial of rehearing *en banc*.

---

[10] The Concurrence notes that there is no circuit split on the questions raised in this case. Concurrence at 1. That may be true, but our closely divided Court today joins two other closely divided courts of appeals that have narrowly denied petitions for rehearing *en banc, see Tucker*, 36 F.4th 1021, *reh'g en banc denied*, 53 F.4th 620 (10th Cir. 2022); *McRaney*, 966 F.3d 346, *reh'g en banc denied*, 980 F.3d 1066 (5th Cir. 2020); and another with internal tension in its own decisions, *compare Herx v. Diocese of Fort Wayne-S. Bend, Inc.*, 772 F.3d 1085, 1086, 1090 (7th Cir. 2014), *with McCarthy*, 714 F.3d at 975.

22

DENNY CHIN, *Circuit Judge*, statement in support of denial of rehearing *en banc*:[1]

In this case, defendants-appellants are individuals and entities affiliated with the Russian Orthodox Church Outside Russia ("ROCOR" and, collectively, "Defendants"). They appealed from three interlocutory orders of the district court: orders denying motions to dismiss, for reconsideration, and to bifurcate discovery or otherwise stay proceedings. Defendants argued that we had appellate jurisdiction over the interlocutory orders based on the collateral order doctrine, which allows for appellate review of an interlocutory order in certain limited circumstances. We disagreed, and held that the collateral order doctrine does not apply in the circumstances here. Accordingly, we dismissed the appeal. *See Belya v. Kapral*, 45 F.4th 621, 625 (2d Cir. 2022). A petition for rehearing *en banc* followed, and the Court now denies the petition.

For the reasons set forth in the panel decision and in Judge Lohier's concurrence in the denial of the petition (the "Concurrence"), I believe the Court has correctly denied the petition. I write to address certain arguments raised in Judge Park's dissent to the denial of rehearing *en banc* (the "Dissent").

---

[1] As a senior judge, I have no vote on whether to rehear a case *en banc*. See 28 U.S.C. 46(c); Fed. R. App. P. 35(a). As a member of the panel that decided the case that is the subject of the *en banc* order, however, I may file a statement expressing my views in the circumstances here, where an active judge has filed an opinion addressing that order.

1

First, the Dissent writes that "[t]his case arises from a minister's suspension by his church," and that the lawsuit "is styled as a defamation claim." Dissent at 1. The suggestion is that this case is not really a defamation case, but instead seeks to intrude on a church's autonomy by subjecting Defendants "to litigation over religious matters." *Id.* at 10. In fact, this is a defamation case and not a case over religious matters. If Belya's allegations are true -- and we must assume they are for now -- this is, as the first amended complaint (the "Complaint") declares, "a case of egregious defamation." J. App'x at 87. If the allegations are true, Defendants made public accusations that Belya forged and fabricated certain documents, including accusations that Belya forged the signature of the "ruling bishop" of ROCOR onto two letters, that he fabricated or otherwise improperly obtained official letterhead, and that he falsely affixed to the letters what appeared to be the ruling bishop's official seal. *See id.* at 95-97. The allegation that Belya committed forgery was posted on the church's social media site by one or more of the Defendants and was re-posted and circulated by religious news outlets and publications. *Id.* at 98.

2

Simple, non-ecclesiastical factual questions are presented: Did Belya forge the letters in question? Or did the ruling bishop actually sign the letters? Were the letters on the ruling bishop's official letterhead? Were the letters stamped with the purported signatory's official seal? Or were the purported letterhead and stamps a fabrication? These are factual questions that a fact-finder could answer without delving into matters of faith and doctrine.

Significantly, the Complaint seeks only damages (and attorney's fees and costs) and not injunctive or declaratory relief. The Complaint does not seek an order declaring that Belya was in fact elected to the position of Bishop of Miami or an injunction requiring Defendants to install him into that or any other position; nor does it seek to vacate Belya's suspension from the church. *See Belya v. Hilarion*, No. 20-CV-6597, 2021 WL 1997547, at *4 (S.D.N.Y. May 19, 2021) (district court noting that "Belya does not ask this Court to determine whether his election was proper or whether he should be reinstated to his role as Bishop of Miami"). Rather, the Complaint asserts only three defamation claims and a fourth claim for vicarious liability related to the defamation claims, and it seeks only damages. This is, indeed, a defamation case.

3

Second, the Dissent refers to "the district court's denials of Defendants' church autonomy defenses." Dissent at 9-10. The district court has not, however, denied Defendants' religious autonomy defenses and it has not rejected the application of the church autonomy doctrine. To the contrary, the district court specifically recognized that issues could arise that it "would not consider" under the doctrine. *Belya*, 2021 WL 1997547, at *4. Indeed, the district court explicitly stated that under the doctrine of ecclesiastical abstention it would not consider a request to install Belya as the Bishop of Miami. *Id.*

In other words, the Dissent's assertion that "the panel decision categorically denies immediate appealability of any church autonomy defense, no matter what the facts might be," Dissent at 17 n. 3, is simply not correct. Where a district court in fact rejects the church autonomy defense and injects itself into matters of church governance, such an order might indeed be immediately appealable. But that is not the situation before us. Rather, as we recognized, the district court here did not rule on the merits of the church autonomy defense or preclude its future invocation. *See Belya*, 45 F.4th at 631; *see also* Concurrence at 2-3. Instead, as further explained in the district court's order entered July 27, 2021, denying Defendants' request to bifurcate discovery or otherwise stay proceedings, the

4

district court ruled that it would "not pass judgment on the internal policies and or determinations of [ROCOR]," and recognized that it would not "be able to under the doctrine of ecclesiastical abstention." J. App'x at 147. As the district court's orders make clear, Defendants may indeed invoke the defense at a later point in the litigation if it becomes apparent that further inquiry and litigation will implicate church autonomy. At that point, the scope of Belya's claims and discovery might have to be limited and dismissal of the lawsuit might even be warranted. The rulings do not bar or decide the merits of the church autonomy defense, and they are not a final rejection of the defense because Defendants may assert it during discovery or later in the course of the lawsuit. *Cf. Abney v. United States*, 431 U.S. 651, 659 (1977) (holding that an order denying a motion to dismiss an indictment on double jeopardy grounds could be appealed under the collateral order doctrine because such an order constitutes "a complete, formal, and, in the trial court, final rejection of a criminal defendant's double jeopardy claim").[2]

---

[2] For example, if, as the litigation proceeds, Belya is unable to prove the falsity of the accusations, the Complaint will be dismissed without any inquiry into church doctrine or governance. If he does prove the falsity of the accusations, the district court at that point will determine whether Belya's claims can be further litigated without intrusion into the church's autonomy.

5

In similar circumstances, the Seventh Circuit also declined to find appellate jurisdiction under the collateral order doctrine. When the diocese in that case sought appellate review of the district court's order denying summary judgment for the diocese on a sex-discrimination claim, the Seventh Circuit dismissed the appeal for lack of jurisdiction. *See Herx v. Diocese of Fort Wayne-South Bend, Inc.*, 772 F.3d 1085, 1091-92 (7th Cir. 2014). The Seventh Circuit reasoned that it did not have appellate jurisdiction because the district court "ha[d] not ordered a religious question submitted to the jury for decision," and in fact the district court "promised to instruct the jury *not* to weigh or evaluate the Church's doctrine." *Id.* at 1091; *cf. McCarthy v. Fuller*, 714 F.3d 971, 975-76 (7th Cir. 2013) (holding that an order was collaterally appealable because it sent the religious question of whether party was a nun to the jury). Here, the district court has made clear that it will not pass judgment on religious questions or submit them to the jury should the case get that far. *See Belya*, 2021 WL 1997547, at *4.

Third, it is apparent that the Dissent's view is that churches are generally immune from the litigation process. But the church autonomy doctrine does not go that far. While the church autonomy doctrine provides religious associations with "independence in matters of faith and doctrine and in closely linked matters

6

of internal government," *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2061 (2020), it does not provide them with "a general immunity from secular laws," *id.* at 2060. To the contrary, "[t]he church autonomy doctrine is not without limits . . . and does not apply to purely secular decisions, even when made by churches." *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 657 (10th Cir. 2002). Rather, the church autonomy doctrine relates to matters of "religious doctrine," *McCarthy*, 714 F.3d at 975, or "religious belief," *Bryce*, 289 F.3d at 657 ("Before the church autonomy doctrine is implicated, a threshold inquiry is whether the alleged misconduct is 'rooted in religious belief.'" (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972))).

The church autonomy doctrine is a defense and it does not provide a general immunity that serves as a jurisdictional bar to suit. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 195 n.4 (2012) ("[T]he [ministerial] exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar."); *cf. Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1036-47 (10th Cir. 2022) (dismissing an interlocutory appeal for lack of jurisdiction and rejecting the argument that the ministerial exception "immunizes a religious employer *from suit* on employment discrimination claims"). The church

autonomy doctrine surely does not give church officials free rein to falsely accuse someone of forgery and fraud. The district court's rulings allow discovery to proceed into secular components of Belya's claims of defamation, and they allow the litigation to proceed with respect to non-ecclesiastical factual questions that would not require a fact-finder to consider matters of faith or internal church government. *See generally Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) (noting that "we have generally denied review of pretrial discovery orders," and holding that the collateral order doctrine did not permit appeal of disclosure orders adverse to attorney-client privilege) (internal quotation marks omitted). And, although the "interlocutory posture" of this appeal "complicate[s] our review, nothing "would preclude [ROCOR] from . . . seeking review in this Court when the decision is actually final." *Gordon Coll. v. DeWeese-Boyd*, 142 S. Ct. 952, 955 (2022) (Alito, J., concurring in denial of certiorari) (denying certiorari and permitting a case to go forward to discovery and trial, notwithstanding defendant's invocation of the church autonomy doctrine).

Fourth, the Dissent likens the church autonomy doctrine to the qualified immunity defense applicable to § 1983 claims. We agree, as the Dissent observes, that "both are rooted in foundational constitutional interests," and that "both are

8

protections against the burdens of litigation itself." Dissent at 15. But qualified immunity is not a general immunity, and it does not insulate government officials from discovery and trial in every instance. Qualified immunity is an immediately appealable collateral order *only* "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Where there is a factual dispute, "an appellate court lacks jurisdiction to review a denial of qualified immunity," *Franco v. Gunsalus*, 972 F.3d 170, 174 (2d Cir. 2020), and, as happens every day of the week, government officials in many § 1983 cases are subject to discovery and even trial.

This case does not yet present any factual questions that implicate church doctrine, and thus this interlocutory appeal is not properly before this Court. *See McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 347, 349 (5th Cir. 2020) (reversing district court's order dismissing case under the ecclesiastical abstention doctrine because the district court's finding that "it would need to resolve ecclesiastical questions in order to resolve [plaintiff's] claims . . . was premature," as "it is not clear that any of [the anticipated factual] determinations will require the court to address purely ecclesiastical questions"), *cert. denied*, 141 S. Ct. 2852 (2021). Defendants have not stipulated, even for

9

purposes of appellate review, to the facts alleged by Belya; they have not admitted, for example, that Belya was falsely accused of forgery. Hence, we do not have appellate jurisdiction.

Finally, the Dissent argues that the panel's decision results in a "novel extension of the 'neutral principles' approach [that] is inconsistent with precedent and threatens to eviscerate the church autonomy doctrine." Dissent at 17. Under the "neutral principles" approach, so long as a court relies "exclusively on objective, well-established [legal] concepts," it may resolve a dispute even when parties are religious bodies. *Jones v. Wolf*, 443 U.S. 595, 602-03 (1979). The panel decision does not extend the law or deviate from precedent. Although the neutral principles of law approach was established in a church property case, *see id.*, we (and other courts) have applied it in other types of disputes. Indeed, in a copyright case involving dissemination of "a prayerbook widely used within the Lubavitch movement of Hasidic Judaism," we rejected the argument that the courts lacked jurisdiction over the dispute because of the church autonomy doctrine and held that:

> Courts may decide disputes that implicate religious interests as long as they can do so based on 'neutral principles' of secular law without undue entanglement in issues of religious doctrine.

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 99 (2d Cir. 2002) (citing *Jones*, 443 U.S. at 604); *see also, e.g.*, *Moon v. Moon*, 833 F. App'x 876, 880 (2d Cir. 2020) (summary order) (applying the neutral principles of law approach to plaintiff's defamation claim against a religious organization), *cert. denied*, 141 S. Ct. 2757 (2021); *McRaney*, 966 F.3d at 349 (holding that plaintiff's defamation claim against a church organization allows the court to "apply neutral principles of tort law" and is thus not barred by the ecclesiastical abstention doctrine).

Using neutral principles of law to resolve secular components of a dispute involving religious parties does not infringe on religious parties' independence. Indeed, the Supreme Court stated in *Jones* that it could not agree "that the First Amendment requires the States to adopt a rule of compulsory deference to religious authority . . . even where no issue of doctrinal controversy is involved." 443 U.S. at 605.

\* \* \*

The collateral order doctrine allows for appellate review of interlocutory orders if the ruling (1) is conclusive; (2) resolves important questions separate from the merits; and (3) is effectively unreviewable on appeal from the final judgment

11

in the underlying action. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The Supreme Court has admonished that the class of collaterally appealable orders must remain "narrow and selective." *Will v. Hallock*, 546 U.S. 345, 350 (2006). Here, as we explained in the panel opinion, the district court's rulings are not conclusive, do not involve claims of right separate from the merits of the case, and would not be unreviewable on appeal after final judgment.

Therefore, the panel correctly held that this Court lacks jurisdiction to hear the appeal.