# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-60293

United States Court of Appeals
Fifth Circuit

**FILED**
July 16, 2020

Lyle W. Cayce
Clerk

WILL MCRANEY,

       Plaintiff - Appellant

v.

THE NORTH AMERICAN MISSION BOARD OF THE SOUTHERN
BAPTIST CONVENTION, INCORPORATED,

       Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi

Before CLEMENT, HIGGINSON, and ENGELHARDT, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Plaintiff-Appellant Will McRaney brought suit against Defendant-Appellee North American Mission Board of the Southern Baptist Convention ("NAMB") for intentional interference with business relationships, defamation, and intentional infliction of emotional distress. The district court dismissed the case for lack of jurisdiction, citing the ecclesiastical abstention doctrine, also known as the religious autonomy doctrine. The district court found that it would need to resolve ecclesiastical questions in order to resolve McRaney's claims. Because that conclusion was premature, we REVERSE and REMAND.

No. 19-60293

We review a dismissal for lack of subject matter jurisdiction *de novo*. *Williams v. Wynne*, 533 F.3d 360, 364 (5th Cir. 2008). Dismissal is only proper if "it appears certain that the plaintiff cannot prove any set of facts in support of her claim which would entitle her to relief." *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007) (quoting *Bombardier Aerospace Emp. Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 35 F.3d 348, 351 (5th Cir. 2003)).[1]

The ecclesiastical abstention doctrine recognizes that the Establishment Clause of the First Amendment precludes judicial review of claims that require resolution of "strictly and purely ecclesiastical" questions. *Serbian E. Orthodox Diocese for U.S. and Can. v. Milivojevich*, 426 U.S. 696, 713 (1976) (quoting *Watson v. Jones*, 13 Wall. 679, 733 (1871)); *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 115–16 (1952); *Kreshik v. St. Nicholas Cathedral*, 363 U.S. 190, 190–91 (1960). "[M]atters of church

---

[1] We note that it is somewhat unclear whether the ecclesiastical abstention doctrine serves as a jurisdictional bar requiring dismissal under Fed. R. Civ. P. 12(b)(1) or an affirmative defense requiring dismissal under Fed. R. Civ. P. 12(b)(6). *See, e.g.*, *Nayak v. MCA, Inc.*, 911 F.2d 1082, 1083 (5th Cir. 1990) (dismissing the case pursuant to Fed. R. Civ. P. 12(b)(6) without explicitly discussing the jurisdictional nature of the doctrine); *Simpson v. Wells Lamont Corp.*, 494 F.2d 490, 492, 495 (5th Cir. 1974) (stating that "[t]he people of the United States conveyed no power to Congress to vest its courts with jurisdiction to settle purely ecclesiastical disputes" but affirming summary judgment rather than instructing the district court to dismiss for lack of jurisdiction); *see also Watson v. Jones*, 13 Wall. 679, 733 (1871) (describing a dispute that is "strictly and purely ecclesiastical in its character" as "a matter over which the civil courts exercise no jurisdiction"); *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 195 n.4 (2012) (clarifying that the related "ministerial exception" is an affirmative defense rather than a jurisdictional bar); *Hubbard v. J Message Grp. Corp.*, 325 F. Supp. 3d 1198, 1208–09 (D.N.M. 2018) (collecting cases) *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 248 n.7 (S.D.N.Y. 2014) (discussing the uncertainty surrounding the jurisdictional nature of the ecclesiastical abstention doctrine post-*Hosanna-Tabor*). We need not resolve this uncertainty because dismissal was improper, regardless. *See Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 171 (5th Cir. 2012) (finding that review under Fed. R. Civ. P. 12(b)(6) "requires us to scrutinize the same materials we would have considered were the case properly before us on a 12(b)(1) motion"); *Ramming v. United States*, 281 F.3d 158, 161–62 (5th Cir. 2001) (providing the standards of review for dismissals under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)).

government, as well as those of faith and doctrine" constitute purely ecclesiastical questions. *Kedroff*, 344 U.S. at 116; *see also Simpson v. Wells Lamont Corp.*, 494 F.2d 490, 493 (5th Cir. 1974) (emphasizing that the ecclesiastical abstention doctrine covers matters of church government as well as matters of religious doctrine). But "[t]he First Amendment does not categorically insulate religious relationships from judicial scrutiny, for to do so would necessarily extend constitutional protection to the secular components of these relationships," which "would impermissibly place a religious leader in a preferred position in our society." *Sanders v. Casa View Baptist Church*, 134 F.3d 331, 335–36 (5th Cir. 1998); *see also Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 703 (1994) (describing the principle "that government should not prefer one religion to another, or religion to irreligion" as "at the heart of the Establishment Clause"); *Jones v. Wolf*, 443 U.S. 595, 602 (1979) (holding that courts may apply neutral principles of law to resolve church property disputes). Therefore, the relevant question is whether it appears certain that resolution of McRaney's claims will require the court to address purely ecclesiastical questions. At this stage, the answer is no.

Critically, many of the relevant facts have yet to be developed. Presently, we know only the following: (1) McRaney formerly worked as the Executive Director of the General Mission Board of the Baptist Convention for Maryland/Delaware ("BCMD"), one of 42 separate state conventions that work in cooperation with the Southern Baptist Convention; (2) NAMB, which has never been McRaney's employer, is one of twelve boards and agencies of the Southern Baptist Convention; (3) NAMB and BCMD entered into a Strategic Partnership Agreement ("SPA") that addressed issues of personnel, cooperation, and funding; (4) McRaney declined to adopt a new SPA on behalf of BCMD, and NAMB notified BCMD that it intended to terminate the SPA in one year; (5) McRaney's employment was either terminated or he resigned; (6)

after his termination, McRaney was uninvited to speak at a large mission symposium in Louisville, Mississippi; and (7) a photograph of McRaney was posted at NAMB headquarters in Alpharetta, Georgia.

McRaney alleges that NAMB intentionally made false statements about him to BCMD that resulted in his termination. Specifically, he alleges that NAMB falsely told BCMD that he refused to meet with Dr. Kevin Ezell, president of NAMB, to discuss a new SPA. He also alleges that NAMB intentionally got him uninvited to speak at the mission symposium and posted his picture at its headquarters to "communicate that [McRaney] was not to be trusted and [was] public enemy #1 of NAMB."

In order to resolve McRaney's claims, the court will need to determine (1) whether NAMB intentionally and maliciously damaged McRaney's business relationships by falsely claiming that he refused to meet with Ezell, *see Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.*, 910 So. 2d 1093, 1098 (Miss. 2005); (2) whether NAMB's statements about McRaney were false, defamatory, and at least negligently made, *see Jernigan v. Humphrey*, 815 So. 2d 1149, 1153 (Miss. 2002); and (3) whether NAMB intentionally caused McRaney to suffer foreseeable and severe emotional distress by displaying his picture at its headquarters, *see Jones v. City of Hattiesburg*, 228 So. 3d 816, 819 (Miss. 2017).

At this early stage of the litigation, it is not clear that any of these determinations will require the court to address purely ecclesiastical questions. McRaney is not challenging the termination of his employment, *see Simpson*, 494 F.2d at 492–93 (affirming dismissal of a lawsuit in which the plaintiff challenged his removal as pastor), and he is not asking the court to weigh in on issues of faith or doctrine, *see Nayak v. MCA, Inc.*, 911 F.2d 1082, 1082–83 (5th Cir. 1990) (affirming dismissal of a defamation lawsuit seeking to enjoin the distribution and presentation of the movie "The Last Temptation

of Christ"). His complaint asks the court to apply neutral principles of tort law to a case that, on the face of the complaint, involves a civil rather than religious dispute. *See, e.g.*, *Jones*, 443 U.S. at 602 (holding that courts may apply neutral principles of law to resolve church property disputes); *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 F. App'x 926, 928 (11th Cir. 2018) ("Civil courts may apply neutral principles of law to decide church disputes that 'involve[] no consideration of doctrinal matters.'" (quoting *Jones*, 443 U.S. at 602)); *Hutterville Hutterian Brethren, Inc. v. Sveen*, 776 F.3d 547, 553 (8th Cir. 2015) ("[A] court need not defer to an ecclesiastical tribunal on secular questions and permissibly may resolve a matter by applying neutral principles of the law." (internal quotation marks omitted)); *Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F.3d 413, 419 (3d Cir. 2012) ("When a church dispute turns on a question devoid of doctrinal implications, civil courts may employ neutral principles of law to adjudicate the controversy."); *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 99–100 (2d Cir. 2002) ("Courts may decide disputes that implicate religious interests as long as they can do so based on 'neutral principles' of secular law without undue entanglement in issues of religious doctrine.").

Other courts have held that similar claims did not require resolution of purely ecclesiastical questions. In *Marshall v. Munro*, 845 P.2d 424 (Alaska 1993), the Alaska Supreme Court found that it had jurisdiction to consider claims of intentional interference with a contract and defamation brought by a minister against a church executive. *Id.* at 425, 429. There, as here, the alleged interference consisted of false statements that were not religious in nature.[2]

---

[2] NAMB argues that *Marshall* is distinguishable because this dispute "is rooted in and intertwined with the primary ministry strategies of various religious organizations." At least at this time, the record does not support NAMB's view. The only derogatory information

No. 19-60293

*Id.* at 425. The court found that, under these circumstances, resolution of the plaintiff's claims would not require the court to determine whether the plaintiff was qualified to serve as a pastor. *Id.* at 428.

Similarly, in *Drevlow v. Lutheran Church, Missouri Synod*, 991 F.2d 468 (8th Cir. 1993), the Eighth Circuit found that it had jurisdiction over a claim of intentional interference with a legitimate expectation of employment brought by a minister against a religious organization. *Id.* at 469, 472. The plaintiff alleged that the organization placed false information—that his spouse had previously been married—in his personal file. *Id.* at 469. The court reasoned that the plaintiff's fitness as a minister was not in dispute and the defendant had not yet "offered any religious explanation for its actions which might entangle the court in a religious controversy." *Id.* at 471–72. The Eighth Circuit recognized, however, that its decision was preliminary. *Id.* at 472 ("If further proceedings reveal that this matter cannot be resolved without interpreting religious procedures or beliefs, the district court should reconsider the . . . motion to dismiss."). The same is true here. If further proceedings and factual development reveal that McRaney's claims cannot be resolved without deciding purely ecclesiastical questions, the court is free to reconsider whether it is appropriate to dismiss some or all of McRaney's claims.[3]

NAMB broadly objects that it may have "valid religious reason[s]" for its actions. On remand, if NAMB presents evidence of these reasons and the district court concludes that it cannot resolve McRaney's claims without

---

McRaney identifies in his complaint—statements by NAMB that McRaney refused to meet with Ezell—is not ecclesiastical in nature.

[3] NAMB previously moved for dismissal based on the ministerial exception, *see Hosanna-Tabor*, 565 U.S. at 188; *see also Our Lady of Guad. Sch. v. Morrissey-Berru*, --- S. Ct. ---, 2020 WL 3808420 (July 8, 2020), but the district court denied that motion, finding that the ministerial exception only applies to disputes between employees and employers, not employees and third parties. Both parties agree that the correctness of the district court's decision regarding the applicability of the ministerial exception is not before us.

addressing these reasons, then there may be cause to dismiss. *See id.* Were such a broad statement alone sufficient to warrant dismissal at this stage, however, religious entities could effectively immunize themselves from judicial review of claims brought against them.

"The First Amendment protects the right of religious institutions 'to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" *Our Lady of Guad. Sch. v. Morrissey-Berru*, --- S. Ct. ---, 2020 WL 3808420, at \*3 (July 8, 2020) (quoting *Kedroff*, 334 U.S. at 116). At this time, it is not certain that resolution of McRaney's claims will require the court to interfere with matters of church government, matters of faith, or matters of doctrine. The district court's dismissal was premature. Accordingly, we REVERSE and REMAND.